J. H. MOHLMAN COMPANY

*v.*

THE AMERICAN GROCERY COMPANY.

[Argued November 28th, 1904.   Decided March 20th, 1905.]

An injury having been received by a servant of a corporation, another employe took the injured servant to a physician, and during the treatment the physician determined that the services of a dentist were necessary ; and the physician, on asking the corporation's manager who would pay the dental bill, was referred to a casualty company which had insured the corporation against liability for accidents to its employes.—*Held*, that the fact that the manager did not deny responsibility on the part of the corporation for the medical treatment rendered, and that he referred the physician to the casualty company, was not a ratification of the physician's employment, and the corporation was not liable to him.

On appeal by receiver from an order advised by Vice-Chancellor Stevenson, allowing claim of Dr. A. Nelson.

*Mr. George C. Tennant,* for the appellant.

*Mr. Jarvis N. Atkinson,* for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The bill in this case was filed by the complainant to have the defendant, the American Grocery Company, declared insolvent. After hearing, a decree of insolvency was entered and a receiver appointed. Among the claims presented to the receiver was one by Dr. A. Nelson, for medical services rendered by him to one Charles Landhagen, a boy who had been in the employ of the grocery company. The claim having been rejected by the receiver, Dr. Nelson appealed to the chancellor, and the hearing of this appeal by one of the vice-chancellors resulted in the

setting aside of the action of the receiver and the allowance of the doctor's claim to the extent of $253. From the order allowing this claim the receiver now appeals to this court.

The following facts appeared from the proofs submitted to the vice-chancellor: Landhagen, the boy to whom the physician's services had been rendered, was kicked by one of the company's horses, while engaged at work in their stable, and received a severe injury to his jaw. He was immediately taken by another employe of the company (one Schriever) to the doctor's office for treatment. Schriever, upon being asked by the doctor who would be responsible for his bill, replied that the American Grocery Company would be good for it. During the course of the treatment, which extended over a period of more than two months, it became necessary, in the judgment of the doctor, to have an intradental plate made for the boy. This work required the services of an expert dentist, and the physician so advised a Mr. O'Brien, another employe of the grocery company, who was in the habit of accompanying Landhagen on his visits to the doctor's office. At the same time that the doctor advised O'Brien of the necessity of this plate he asked him who would pay the dentist's bill, and the latter referred him to the grocery company's cashier. The doctor then called upon the cashier, who, in turn, applied to the company's manager for instructions, and was told by the manager to refer the doctor to the Fidelity and Casualty Company, a corporation which had insured the grocery company against liability for accidents to its employes. The cashier obeyed this instruction of the manager, and the doctor then called up the casualty company on the telephone, and was informed by the agent of the casualty company who answered his call not to go ahead with the case until that company had looked into the matter, and that if he sent the boy to the dentist, and incurred any bill, he would have to pay it out of his own pocket. No other communications were had by the doctor with the employes or agents of the grocery company relating to compensation for his services, so far as the proofs in the case show.

It was not contended that the statement made by Schriever that the American Grocery Company would be good for the physician's bill imposed any liability upon that corporation; in

fact, it was conceded by counsel, and held by the vice-chancellor, that he had no authority to bind it, and that there was nothing in the case from which it could be concluded that Schriever's statement had been communicated to the grocery company and ratified or acquiesced in by it. But the vice-chancellor considered that liability on the part of the grocery company to pay the physicians's bill was shown by the fact that when its manager was advised as to the necessity of having an intradental plate made for the boy, he, instead of denying any responsibility on the part of the company for the boy's injuries, or any liability to pay for the medical and surgical treatment rendered necessary thereby, referred the physician to the Fidelity and Casualty Company. The vice-chancellor was of opinion that this failure to repudiate liability, coupled with the reference of the matter to the casualty company, was "the most positive affirmation of the liability of the assured that could possibly be made;" that it was "a ratification of the retainer of the doctor and notified him that he was contracting an obligation against the corporation from day to day while rendering those services" to the boy.

We do not think the deduction drawn by the vice-chancellor from the failure of the grocery company's manager to repudiate liability on its part, and his referring the doctor to the casualty company, is justified. The question of the company's liability was one with which the manager was not concerned. He knew that, if it existed, the company was protected against loss by reason thereof through its contract with the casualty company. He properly concluded, therefore, that as the casualty company was ultimately liable, if liability existed at all, for the expenses incurred on account of the boy's injuries, that company, and not the grocery company, was the one to determine whether or not the proposed expenditure should be made. His reference of the physician to the casualty company was tantamount to saying: "We have no responsibility in this matter; if the boy has any claim, the casualty company must pay it; they, therefore, and not the American Grocery Company, are the ones by whom the question of incurring this proposed expense must be passed upon." Instead of being an affirmation of the grocery company's liability, and a notification to the physician that he was

contracting an obligation against that company by treating the boy for his injuries, it was rather a notification that the doctor must look to the casualty company, and not to the grocery com-·pany, for compensation for his services.

Finding nothing in the evidence submitted to the court below from which a promise on the part of the grocery company to pay the claimant for his services can fairly be implied, we conclude that the order appealed from should be reversed.

*For affirmance*—None.

*For reversal*—The CHIEF-JUSTICE, DIXON, GARRISON, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN—10.